MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:        2026 ME 70
Docket:          Pen-25-478
Submitted
  On Briefs:     June 16, 2026
Decided:         July 28, 2026

Panel:           LAWRENCE, DOUGLAS, LIPEZ, and TAUB, JJ., and HORTON, A.R.J.

PAT DOE

v.

ALEXANDER Y. MILLER

DOUGLAS, J.

[¶1]  Pat Doe[1] appeals from a judgment of the District Court (Bangor, *Szylvian, J.*) dismissing her complaint for protection from abuse, filed against Alexander Y. Miller on behalf of herself and their three young children.  The court dismissed the complaint as to Doe based on a lack of personal jurisdiction and as to the children based on the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), 19-A M.R.S. §§ 1731-1783 (2026).  Because we conclude that the court had jurisdiction, we vacate the judgment and remand for further proceedings.

---

[1]  Pursuant to federal law, we do not identify the plaintiff in this action for protection from abuse and limit our description of events and locations to avoid revealing "the identity or location of the party protected under [a protection] order" as required by 18 U.S.C.A. § 2265(d)(3) (Westlaw through Pub. L. No. 119-99). *See Doe v. Tierney*, 2018 ME 101, n.1, 189 A.3d 756.

## I. BACKGROUND

[¶2] We draw the facts from the record before the trial court. On June 16, 2025, the Circuit Court for Calvert County in Maryland entered an order after a contested hearing denying a petition for protection that Doe had filed against Miller in that state. The next day, in the Connecticut Superior Court, Doe filed an application for relief from abuse against Miller, who by then resided in Maine. On June 17, 2025, the Connecticut Superior Court entered a temporary ex parte order of protection that placed the children with Doe, with no visitation rights for Miller, and was to remain in effect until July 1, 2025.

[¶3] On June 23, 2025, before the temporary order entered in Connecticut expired, Doe filed a complaint for protection from abuse in the Maine District Court. Her allegations included that Miller had "used firearms in a threatening and intimidating way"; had, in Maryland, stalked her, trespassed onto her property, and burgled her home; had taken her service animal and pet; and had engaged in "cyber harassment," interfering with her financial and electronic accounts without permission and publicizing private recordings of her. She sought protection particularly so that she could enter the parties' Maine property to recover animals and personal property that Miller had

allegedly unlawfully possessed.  She also asked to be awarded sole custody of the children.

[¶4]  The court (*Dufour, J.*) entered a temporary order of protection on June 23, 2025, as to Doe only, but not as to the children.  Without consulting either the Maryland court or the Connecticut court,[2] the court entered an order giving Doe temporary sole parental rights and responsibilities regarding the children.  The order was to remain in place until the service of a final protection order, the entry of a modified temporary order, or the entry of an order terminating the temporary order.  The order notified the parties of a hearing scheduled for July 10, 2025.

[¶5]  At the July 10 hearing, the parties informed the court (*Mattson, J.*) that, in addition to the matter pending in Connecticut, there was a family matter pending in Maryland; that Miller had been charged in Maryland with burglary, theft, and interference with service based on conduct that he allegedly perpetrated against Doe; and that a no-contact order existed in Maryland. Because of interstate child custody issues, the court continued the case until August 2025, with the temporary order remaining in effect.  In August, the case

---

[2] The complaint indicated that there was a "[c]ustody [c]omplaint with hearing schedule[d] in and around July 19 in Calvert County, MD" and that there was a "[p]rotective order awarding sole custody of all 3 minor children to [Doe] from Stamford, CT."

4

was again continued due to the court's time constraints, and the temporary order remained in effect.

[¶6]  The court (*Szylvian, J.*) held a hearing on October 8, 2025.  The parties confirmed that a parental rights action remained pending in Maryland, with no order yet in place and the next proceeding in Maryland scheduled for November 10, 2025.  The court confirmed that although the Maryland court had entered a temporary order of protection,[3] it denied a final order.  As to the Connecticut matter, Doe informed the court that after multiple continuances for her to serve Miller, she withdrew the complaint, and the Connecticut court— after a remote hearing—dismissed the matter on August 18, 2025.

[¶7]  Doe further informed the court that she resided in Maryland with the children but that they had been staying in Maine so that she could attend to legal matters.  Miller, the parties agreed, resided in Gouldsboro, in a home that the parties own.  Miller informed the court that he had been found not guilty of all criminal charges.  He had not seen the children since May 29, 2025.

[¶8]  The court concluded that it did not have jurisdiction to act on the complaint because a temporary order of protection had been in place in Connecticut when Doe filed her complaint in Maine.  The court reasoned that

---

[3]  Because the record does not include the Maryland temporary order, it is unclear whether the order was entered on behalf of Doe, the children, or all of them.

the Connecticut court had already exercised jurisdiction over the children's custody, thereby preventing the Maine court from acting on the Maine complaint. Although Doe argued that the Maine order protecting her personally should remain in place, the court concluded that the Connecticut order also protected Doe and that because Doe had invoked personal jurisdiction in Connecticut, she could not begin a new proceeding in Maine on the same grounds. The court concluded that it had lacked authority to enter the temporary order, vacated that order, and dismissed the complaint. The court then entered a written dismissal immediately. The written dismissal stated that "the [c]ourt did not have personal jurisdiction over any of the Plaintiffs at the time the action was commenced" and that "[a] more detailed order of the court's analysis [would] follow."

[¶9] The court entered the detailed order on October 16, 2025. In that order, the court clarified that although it could, under the UCCJEA, recognize and enforce the Connecticut order as to the children, it lacked jurisdiction to consider anew the issues raised in connection with that order. As to Doe, the court concluded that she had submitted to personal jurisdiction for litigation in Connecticut and that, although that matter had since been dismissed, the court had lacked personal jurisdiction when Doe filed her complaint in Maine and the

6

Maine complaint should therefore have been dismissed immediately upon its filing.

[¶10]  Doe timely appealed.  *See* 19-A M.R.S. § 104 (2026); 14 M.R.S. § 1901(1) (2026); M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

### A.    Dismissal as to Doe for Lack of Personal Jurisdiction

[¶11]  When the pertinent facts are not in dispute, we review a dismissal for lack of personal jurisdiction de novo.  *Dorf v. Complastik Corp.*, 1999 ME 133, ¶ 14, 735 A.2d 984.  Unlike subject matter jurisdiction, which a court may consider sua sponte, a court may not ordinarily raise an issue of personal jurisdiction on its own initiative, as personal jurisdiction "is normally waived as a defense if it is neither raised by motion nor set forth in a responsive pleading."  *Architectural Woodcraft Co. v. Read*, 464 A.2d 210, 212 (Me. 1983) (citing M.R. Civ. P. 12(h)(1)).  Moreover, because a plaintiff consents to personal jurisdiction by filing the complaint, *see Kradoska v. Kipp*, 397 A.2d 562, 566 (Me. 1979), and "the pendency of an action . . . in one state is not sufficient cause, as a general rule, for the abatement of an action subsequently commenced in another state between the same parties for the same cause," *Fitch v. Whaples*,

220 A.2d 170, 172 (Me. 1966), the court erred in concluding that it lacked personal jurisdiction over Doe.[4]

[¶12]   The record does not support a sua sponte dismissal of Doe's complaint for lack of personal jurisdiction over either party, particularly given Miller's residence in the parties' property in Maine and Doe's allegation of her need to be present in the state to handle legal and property matters. *See* 14 M.R.S. § 704-A(2)(C), (G) (2026).  The existence of the pending action in Connecticut, even if a temporary order in the action was still in effect at the time of the October 2025 hearing in Maine, did not deprive the court of authority. Thus, as to Doe's complaint filed individually on her own behalf, we vacate the judgment of dismissal and remand for further proceedings.

## B.     Dismissal as to the Children Under the UCCJEA

[¶13]  We review a court's interpretation and application of the UCCJEA de novo as a question of law.  *Cole v. Cushman*, 2008 ME 72, ¶ 8, 946 A.2d 430.

---

[4] The analysis of the court may be more akin to a collateral estoppel analysis, but because no final judgment had been entered in Connecticut and the record is devoid of information about the issues litigated in the proceedings on the protection orders sought in Connecticut and Maryland, the doctrine of collateral estoppel could not properly be applied on the record before the court. *See Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 17, 989 A.2d 733.

8

[¶14] Under the UCCJEA, which all three states involved have adopted,[5] absent an emergency, a state has jurisdiction only in the circumstances provided in 19-A M.R.S. § 1745(1):

> **A.** This State is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within 6 months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State;
>
> **B.** A court of another state does not have jurisdiction under paragraph A or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under section 1751 or 1752 and:
>
>> **(1)** The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and
>>
>> **(2)** Substantial evidence is available in this State concerning the child's care, protection, training and personal relationships;
>
> **C.** All courts having jurisdiction under paragraph A or B have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under section 1751 or 1752; or
>
> **D.** No court of any other state would have jurisdiction under the criteria specified in paragraph A, B or C.

---

[5] *See* Md. Code Ann., Family Law tit. 9.5 (West, Westlaw through June 1, 2026, from the 2026 Regular Session of the General Assembly); Conn. Gen. Stat. Ann. tit. 46b, ch. 815P (West, Westlaw through 2026 Regular Session enrolled and approved by the Governor on or before May 20, 2026).

For purposes of this statute, the "home state" for a child who—like the parties' children—is at least six months old is "the state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child custody proceeding." 19-A M.R.S. § 1732(7). Section 1745(1) "is the exclusive jurisdictional basis for making a child custody determination by a court of this State," and "[p]hysical presence of or personal jurisdiction over a party or a child is not necessary or sufficient to make a child custody determination." *Id.* § 1745(2), (3).

[¶15] Except in the case of emergency jurisdiction, "a court of this State may not exercise its jurisdiction under this subchapter if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this chapter, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this State is a more convenient forum under section 1751." 19-A M.R.S. § 1750(1). The UCCJEA provides a specific process for a court to follow when a party has commenced a child custody proceeding[6] in that court while a child custody proceeding is already pending in another jurisdiction:

---

[6] For purposes of the UCCJEA, a "child custody proceeding" is "a proceeding in which legal custody, physical custody or visitation with respect to a child is an issue. The term includes a proceeding for

> [A] court of this State, before hearing a child custody proceeding, shall examine the court documents and other information supplied by the parties pursuant to section 1753. *If the court determines that a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this chapter, the court of this State shall stay its proceeding and communicate with the court of the other state.* If the court of the state having jurisdiction substantially in accordance with this chapter does not determine that the court of this State is a more appropriate forum, the court of this State shall dismiss the proceeding.

*Id.* § 1750(2) (emphasis added). As the comment to the uniform act states with respect to simultaneous proceedings, "[c]ommunication between courts *is required* when it is determined that a proceeding has been commenced in another State," though the "problem of simultaneous proceedings" should not be a significant issue because of other UCCJEA provisions.[7] Unif. Child Custody Jurisdiction & Enf't Act § 206 cmt., 9 pt. IA U.L.A. 525 (2019) (emphasis added).

---

divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights and protection from domestic violence, in which the issue may appear." 19-A M.R.S. § 1732(4).

[7] Among those provisions are statutes that (1) prioritize the jurisdiction of the courts of a child's home state, *see* Unif. Child Custody Jurisdiction & Enf't Act § 201, 9 pt. IA U.L.A. 504 (2019); *see* 19-A M.R.S. § 1745; *see, e.g.*, *Nash v. Salter*, 760 N.W.2d 612, 615-17, 621 (Mich. Ct. App. 2008) (holding that a Michigan court lacked jurisdiction when Texas was the home state of the child and thus had jurisdiction to make an initial custody determination); and (2) establish exclusive, continuing jurisdiction of the courts in the state that makes the initial child custody determination under section 1745 or its equivalent, *see* Unif. Child Custody Jurisdiction & Enf't Act § 202, 9 pt. IA U.L.A. 510-11; 19-A M.R.S. § 1746. *See Tomlinson v. Weatherford*, 399 P.3d 961, 964 (N.M. Ct. App. 2017) ("The Act . . . prioritizes home state jurisdiction, which has largely resolved the problem of simultaneous proceedings.").

[¶16]  The District Court here ultimately purported to apply subsection 1 of section 1750 by declining jurisdiction over the children but neglected the procedure required by subsection 2 each time the matter came before the court. *See Dybowski v. Skiba*, No. FA074020128, 2007 WL 3173595, at *4-5 (Conn. Super. Ct. Oct. 12, 2007) (stating that under the UCCJEA, even if a state appears to be the home state, a court of another state must not automatically dismiss a complaint but instead stay the proceeding and communicate with the court of that state to resolve which court shall have jurisdiction).

[¶17]  The point of communication between jurisdictions is to determine the proper place for litigation.  *See, e.g.*, *Smith v. Padolko*, 2008 ME 56, ¶ 5, 955 A.2d 740 ("The Maine trial court held a Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) telephone conference with the Ohio court and concurred that Maine was the children's home state under the UCCJEA, and the Ohio court vacated the protection order as to the children . . . ."); *see also* *Rainbow v. Ransom*, 2010 ME 22, ¶ 14, 990 A.2d 535 (holding that although the UCCJEA aims "to prevent conflict between forums by favoring the home state of the child," the child's home state "may not always be the most appropriate forum for a parental rights determination, particularly if domestic violence has occurred, and is likely to continue, in the home state").

[¶18]  Because the District Court did not communicate with the courts in Connecticut and Maryland, the court did not know which state, if any, was the children's home state or whether Connecticut had jurisdiction in conformity with the UCCJEA given the pending proceedings in Maryland and the parents' residences in Maryland and Maine.  *See* 19-A M.R.S. §§ 1732(7), 1750(2).  Given the lack of communication with the other states at any stage in the proceedings concerning proper jurisdiction over the children, and in light of our vacating the October 2025 order of dismissal, we direct the District Court on remand to (1) determine whether Doe still seeks relief with respect to the children in connection with her complaint for protection from abuse, and if so, (2) take the appropriate steps under the UCCJEA as discussed above before considering whether to grant such relief.[8]

---

   [8]  Because we vacate the judgment and remand the matter, we need not consider whether the court had temporary emergency jurisdiction, which arises "if the child is present in this State and the child has been abandoned or it is necessary in an emergency to protect the child because the child or a sibling or parent of the child is subjected to or threatened with mistreatment or abuse."  19-A M.R.S. § 1748(1); *see id.* § 1750(1); *In re K.L.B.*, 431 P.3d 883, 892 (Kan. Ct. App. 2018) (construing an "emergency" as "[a] serious situation or occurrence that happens unexpectedly and demands immediate action" (quotation marks omitted)); *see also Campbell v. Martin*, 2002 ME 112, ¶ 8, 802 A.2d 395 (holding that although a Maine court exercised temporary, emergency jurisdiction, another state with UCCJEA home state jurisdiction would make the separate and more permanent adjudication of child custody because the Maine court's "exercise of jurisdiction was no longer necessary to protect the child").  Because the District Court found no grounds on which to issue a temporary protection from abuse order on behalf of the children, and denied the request for one, it is doubtful that a basis for exercising temporary emergency jurisdiction existed at the outset of this case.  It is also unclear from the record whether any issues with respect to the children remain active.  By this point, the issues of parental rights and responsibilities may well have been addressed in the Maryland proceedings.

The entry is:

> Judgment vacated. Remanded for (1) further proceedings on Doe's request for an order protecting her; (2) a determination whether Doe still seeks an order protecting the children; and (3) appropriate action under the UCCJEA if Doe does seek an order protecting the children.

---

Pat Doe, appellant pro se

Alexander Y. Miller, appellee pro se

Bangor District Court docket number PFA-2025-204
FOR CLERK REFERENCE ONLY